We'll hear argument next in Case 19-161, the Department of Homeland Security v. Thuraissigiam. Mr. Kneedler? Mr. Chief Justice, and may it please the Court, Congress established the expedited removal system in 1996 for aliens who arrive at our borders or enter illegally and have no entry documents. Such aliens are clearly inadmissible and have no right to be in this country. Congress reasonably concluded that a full-blown removal hearing was not necessary to make that determination. Congress was also concerned, however, about the possibility for delay and abuse of the asylum system if every time such a clearly inadmissible alien sought asylum. What it did then was to provide for a three-tiered administrative screening system to first determine whether the alien had a credible fear of persecution. Respondent contends that the suspension clause requires a fact-laden judicial review of the negative credible fear determination made in that screening process. Congress, however, while it preserved habeas corpus, tailored it to the special circumstances of expedited removal by limiting it to whether the alien is eligible for expedited removal and whether such an order was entered. Congress's judgment that that approach was necessary for the control of immigration and control of the borders is entitled to great weight and it is consistent with the suspension clause. First, Congress has repeatedly said that an alien seeking admission is entitled only to the procedures Congress has provided, and it has held for more than 100 years that Congress may vest the determination of whether an individual alien is excludable in an executive officer. Indeed, it said that a determination by such an officer acting within his jurisdiction is due process for purposes of the Constitution. And when such an order is issued under this system, that expedited removal order establishes the government's right to detain him. A fortiori, that is true when you have a situation involving an inadmissible alien who seeks review of a negative screening determination for possible relief from removal notwithstanding his inadmissibility. Mr. Kneedler, it's one thing when an alien comes and has no protected ground to stay here. There's no legal right to stay and so expedited proceedings are okay because they have no right to be here. But when someone's seeking asylum, they have a statutory right to stay if they meet the elements of the statute. So that's a vastly different question of whether the suspension clause, which predated the due process clause by 100 years, the suspension clause at the time it was viewed as permitting anyone who had a legal claim to stay to file a habeas petition. I don't know how that right all of a sudden gets transformed merely because there's a second constitutional right to due process. Meaning those are two different provisions of the constitution. One predated the other. And the finality error cases were very clear. If you have a claimed right to be in the United States, whether you're on the shore from a boat that's landed or you're from Puerto Rico and you think that your citizenship gives you a right to come in, a whole slew of cases from the finality error under the suspension clause who said you have a habeas right. So I don't know how that's the same thing. You assume the person has no clear right, but they do have a right to stay if they meet the criteria of the asylum. And several responses to that. Those finality error cases all uniformly hold that a court may not review the determination in an individual case whether the alien has satisfied the conditions for removal. And so the Court has held that Congress may vest that determination in an executive officer and that that is sufficient. And for habeas corpus purposes, that sufficient determination establishes the executive's power to detain the alien. Suppose that Congress passed a law which said, make it an alien who has been here for some time, but perhaps illegally, walking down the street and an officer picks him up and puts him in prison. And he would like to say to a court, judge, the officer was wrong on the law. He has no such right. But we have a statute that says, judge, you can only review whether he did order him put in prison. Would you say that's consistent with the purpose of habeas? Which, after all, since I guess, 17th century, 16th century, 15th century, maybe earlier, has said the purpose of habeas is to review the lawfulness of what the officer has done. Not to just review whether he ordered him put in jail. And that right became a right of the people, not just the king. The king wanted to see if his officers were following the law. Now, they may have a lot of discretion and so forth, but here we have a statute which says, judge, you cannot determine whether the officer has followed the law. All you can determine is whether he issued an order saying keep him in jail or send him wherever or whatever. Well, I mean, the inconsistency with habeas and the right of the people to bring it, to see if the kings or the presidents or whoever's officers are following the law, would seem fairly seriously undermined, wouldn't it? Well, that is what you're describing is quite different from what we have here. Again, respondent, like almost any alien in expedited removal, does not challenge the fact that he has no right to be in the country. What he seeks is review of a screening determination that he doesn't have a credible fear enabling him to get relief, notwithstanding his admissibility. Yeah, he's saying I have a right to be here because I have a claim for asylum. But it's very different, and no one has pointed to anything at common law or in the finality determination cases of a situation where a person is inadmissible conceitably, but wants to receive relief from removal. And that's significant. Asylum, for example. I guess I just don't understand this, Mr. Kneedler, because on certain conditions, if he shows certain things, he has a right to asylum. And what he's trying to get is a hearing that adequately determines whether he can show those things. So, you know, on certain conditions, he has a right to release. He has a right to live in this country. And that's exactly what he's challenging, is whether he's getting a fair hearing to determine that question. This is a very different context where someone is saying not that he has a right under domestic law to be in this country, but that he doesn't want to be sent back to another country because of his fear of conditions there. This is directly like the rule of noninquiry that has been applied for many, many years in extradition, which is one of the analogies that Respondent draws. A court may not review the determination in the extradition context of the executive's determination about whether the treatment the person might experience in another country. But you don't contest, I guess I'm just not really quite understanding this argument, because you don't contest that under the statute, if he shows certain things, he has a right to remain in this country as per the asylum statute. Well, again, asylum is discretionary. He does not have a right under the asylum statute. And Congress, in affording a right to go through the screening process, was not required to attach to it judicial review. If Congress knew that was coming, maybe it wouldn't have provided for asylum at all. And for withholding and cap protection, as was clear from the prior argument, that does not afford a right to be in this country. It is simply a withholding of being sent to another country. This Court's unanimous decision in Munaf is very much on point in that respect. The Court there held that it is not for a court in habeas corpus, even involving a citizen, to review the conditions of the place where the person would be sent. Here we have an alien in expedited removal who is assimilated to one at the border who has no right to be in the country. You might. I mean, there might be circumstances where even on your argument, the claim is a claim that this particular judge, who is an immigration official, this particular individual behaved unlawfully, contrary to the Constitution. He didn't even come into the room. You've read their brief. He did it for religious reasons. He's against us. He did it because, I mean, there are certain claims that it's possible Congress cannot take away without, let's say, a hearing, which they've had, and the individual lost it. I'm having a hard time, because I can think of analogies, distinguishing it from a case that's like this. But what happened? He's walking down the street and thrown into jail. And there he claims, you know, you see the analogies. Tell me why there are no claims. Actually, I don't see the analogy, because this is a very different and limited focus context where an alien who has entered illegally has no right to be in the country and nonetheless is asking for basically mercy under the statutes that Congress has enacted. Maybe that's it. I don't know. You'd have to at least, if he has a right to mercy under the statute. Look, there are all the Chinese cases and so forth, you know, the Chinese exclusion cases and so forth, which analogizes it very much for habeas purposes to being put into jail. I mean, for habeas purposes. And so if you accept all those cases, then what? Even looking at it in that way, what those courts repeatedly hold, all the way back to the court's decision in IQ more than 100 years ago, is the fact-finding, whether the person, as a matter of fact, comes within the scope of the statute, may be committed entirely to an executive officer. And that is due process. And once the executive officer, acting within his jurisdiction, makes that determination, that establishes the executive's ability to detain the person. And that is particularly true, as I say, where the question is not whether the person is entitled to come into this country because of domestic considerations, but where the claim is based on, please don't send me back to another country because of conditions in that country. And that is squarely in addition in the realm of the rule of noninquiry, where Congress may, if it wants to, after a full removal hearing, it is provided for review of CAT claims and withholding claims. But this is a system deliberately designed by Congress to be a quick screening, so that the system does not get bogged down and delay in which aliens would be here for a long period of time and maybe get released into the population because there's no sufficient bed space. What Congress did was try to accommodate the interest in affording a person to at least make a claim of asylum and the need for expedited removal by having this screening system. And what Respondent is seeking here is basically a fact-laden review. No statutory interpretation question is involved here. What he wants is a fact-laden review of the determination that he has not established a credible fear. Even in the context of whether an alien is excludable, that was not reviewable under the long line of this Court's decisions during the finality era. But in addition, because of the nature of the screening involved here concerning fears of conditions in another country, a situation in which, again, this Court unanimously in Munaf held, was not necessary and did not have to be reviewed under habeas corpus for a United States citizen to examine the condition. Does your constitutional principle change at some point based on how long the non-citizen has been in the country, even though unlawfully? Well, we think Congress is entitled to make a judgment about how long that period should be, and Congress has established a two-year limitation, and we think that that judgment is entitled to great respect. Significantly, though, what's at issue here Is there an outer boundary to that, do you think? There may well be, but again, this is an act of Congress, and we think Congress's judgment along those lines should be respected. I wasn't going to bring it up, but I will. Why? The normal way, I think, this is just my view, but the normal way that courts have dealt with the kind of problem you're raising is you say something like, there's tremendous discretion on the part of the executive branch, or sometimes it's a political question, we won't even review it. But Boumediene says that the detainee has the right to go into court under habeas and to make his claim. Now, the judge, which Boumediene didn't really talk about, may have tremendous discretion, may not, may say it's up to the executive branch, may say all the things that you said. I don't know. But what you can't do, at least under Boumediene, is to take away his right to go into court and to make his claim to the judge. What is your response? My response is Congress did not take away habeas corpus. Congress preserved habeas corpus, and as Boumediene itself said, habeas is a flexible, adaptable remedy, and what Congress did here was tailor it to the specific circumstances of expedited removal. Again, even under traditional habeas in the immigration context, courts did not review factual determinations, and in particular, they should not be required to review, Congress doesn't have to provide. So is your position, so I understand it, let's assume, and I'm borrowing Justice Breyer's assumption, that there is an error of law, either of law or of application of facts to law, and I know you'll dispute that, mixed questions. But assuming there's a mixed question or there's an error of law, are you still saying that habeas relief is unwarranted, cannot be given? Because as I understand this statute, there are only three reasons that you can get judicial review, and none of them have to do with errors of law. Yes. We think Congress is not required by the suspension clause to provide for review of errors of law in this context. All right. So how do you deal with the error cases? You're absolutely right that they said that fact-finding by the executive could be done by the executive. But all of them presume that there was still a habeas right to challenge errors of law. Well, those cases don't actually hold, in our view, that the suspension clause required that. But putting it to one side, they did not involve the situation here, where what a person is seeking is review, not of a statutory right to come into the country because of domestic, satisfying domestic requirements, but review of a desire not to be sent to another country because of conditions here or there. And we think that... I'm sorry. The whole idea of freedom, life, liberty and freedom, is, and what the finality error cases showed, is that you have a right to remain if you have a right to remain. And so if they have a right, a legal right, a legal error has been committed with respect to asylum, it doesn't matter whether they're seeking release here or not to be turned back somewhere else. Your freedom has been stopped. That's what all of these Chinese exclusion cases were about, people at the shore, people who were stopped at a border. The shore is equivalent to a border. So I'm having trouble with your argument because you're turning around what the idea of habeas  causa is. It's when the government stops your liberty of remaining if you have a right to remain. You have a right not to go someplace else. I don't think the Court can look just at the finality cases, although we think they answer the question here because this is a fact-laden review. The Court also has to... No, but you're going further now. No, but the Court also has to consider that the rule of non-inquiry cases in which the Court has repeatedly held, all the way back to Neely, with a lineage as old as our immigration laws, that habeas review is not available to review the conditions or what will happen to the person when he goes to another country, even for questions of law. That's not the issue. The focus of habeas is not the issue of where you're going to be released to. The issue is are you going to be released here? But if someone's... You're right. If someone is sought for extradition purposes and they are in the United States and they are claiming, don't send me to another country that has requested my extradition because of what the procedures will be there, what treatment I will be, I will receive there, the rule of non-inquiry has sustained the ability of Congress not to provide for judicial review. And that was true in Munaf in this Court's unanimous decision. I'm just not quite understanding why that would be. If you look at the finality era cases, these are people who had basically no connection at all to the United States, some who had not entered the country, not citizens, not nothing. And you're saying that they were entitled to a kind of proceeding that this person is not just because he has made sort of the best kind of claim you can make to stay in this country, which is that if we turn you back, you'll be subject to torture or persecution. Why should that person be treated less well in terms of the kinds of procedures he can invoke than the person in the finality era cases, which had no connection at all and who had no fear of persecution or torture? Again, in the finality era cases, the courts did not review the fact-based determination about whether someone came within the statute, and they specifically did not include the situation where the claim is about conditions in another country. In this Court's decision in Munaf, it might have been claimed that the Secretary of State was somehow misinterpreting Catt when he decided that the person should be, or the Department of Defense, who stayed in an extradition case, might be misunderstanding the interpretation of the treaty. But your view, you know, it does not only speak to pure factual matters. Your view applies to legal matters and mixed questions as well. But there's no statutory interpretation question here. But just to Well, there's a view as to whether the hearing officer followed the appropriate procedures. But that is a fact-laden review that would require unpacking what happened, would require the Usually we don't think that, you know, did you follow the law as to the procedural requirements that the law states is a fact-laden review. I think it's a pretty common thing for courts to do. It's like, did this executive officer follow the procedures that he was supposed to follow? The courts, there are no decisions in the finality era that are pointed to that provide for that kind of review. But again, in Munaf But why should that kind of review be so different? That's a pretty basic question. Did the executive officers follow the rules that he was supposed to follow? If I could just step back for a moment. The common law, the finality era cases, all the sources that are looked at, nothing affirmatively establishes a right of judicial review of this sort of screening determination that Congress decided could be attached to the expedited removal system. And Congress's judgment in that situation should be entitled to great respect, especially against the background of the rule of non-inquiry. I think you've been trying to make a point about Munaf. Yes. I'm wondering if you could tell me what it is. Yes. No, no. The point is that there was no review in habeas of the determination that the person should be turned over to Iraqi authorities, where the claim was if I'm turned over there, that person, you know, I may make a mistake. Right. So what is the analogy to this situation? Same thing here where the person is saying, don't don't I want a court to determine whether to review an executive determination as to whether I will be tortured in another country. And in Munaf, the court didn't try to separate whether the executive had decided a question of law, a question of fact. It was sufficient that the executive had made a determination regarding conditions in another country. Here, there's even less review because it's an initial preliminary screening to see whether the person has even made a credible fear showing about conditions in another country. And we think that that is squarely within the realm of things that habeas corpus does not have to be available to second guess the executive's determination. Otherwise, you could have considerable delay. There were 9,000, as we point out in our brief, there are 9,000 negative credible fear determinations that have been made in recent years, 100,000 credible credible fear referrals. If judicial review is added on top of this with close parsing of the limited administrative record that this process provides for, it would really bog down the system. And we think Congress's judgment that that is not constitutionally required is entitled to great respect. Otherwise, you will have protracted proceedings. It could lead to aliens being released into the country. That, in turn, could create an incentive to come to the country and be released and undermine the whole point of Congress enacting the expedited removal system. Thank you, counsel. Mr. Gillard. Mr. Chief Justice, and may it please the Court, the statute here eliminates any meaningful role for the courts, even to ensure that the statutes and regulations were followed. During the 60-year finality period, Congress also tried to exclude the courts, leaving only that review that was, quote, unquote, required by the Constitution. This Court nonetheless continued to review legal claims in habeas. It did so while expressly rejecting the government's argument that deportation was not the type of restraint that triggers habeas. It did so critically in cases to review statutory and regulatory limits, even where the Court expressly held that those particular noncitizens lacked constitutional procedural due process rights. It did so where the noncitizen was seeking initial entry, where the noncitizen was in the country illegally, and, most critically in response to what the government said, in cases where the noncitizen was removable and seeking only to challenge the denial of relief from removal. The finality-era cases are consistent with the common law and answer each of the government's arguments. The government has cited no common law support. Moreover, the government's undefined meaningful ties test is unworkable. It would also mean that asylum seekers and potentially millions of other unknown noncitizens inside the country could be summarily expelled without any judicial review or without even any administrative review. The suspension clause is a check on the political branches. This Court has never before allowed the elimination of judicial review over the legality of deportations. The Court once again should preserve habeas review, as it did during the Chinese exclusion era, the finality era, and throughout the country's history. The political branches undoubtedly have enormous power in the immigration area, but the one thing it cannot do, and this Court has never allowed them to do, is remove a check on themselves. So I want to address what I see as the government's fundamental point now. Their opening brief made very broad arguments about having no habeas at all. What they've retreated to now is, well, you were found inadmissible, you're in the country illegally, and you're only challenging relief, and no finality era addresses that. That's absolutely wrong. And let me just give the Court two cases. One is Accardi decided the year after Heckler v. Barber said, the only review under this regime is that which is required by the Constitution. Accardi came into court and said, yes, I'm in the country illegally, but I'd like to apply for a discretionary form of relief that will allow me to stay in the country, suspension of deportation. The Court reviewed it in habeas, found a regulatory violation, and sent the case back for a new hearing. Let me give you one other that involves refugees, Todd v. Waldman. They came to this country seeking initial entry. The general admissibility rule was you had to be literate. The Jewish refugees in that case said, but we are refugees, therefore we can stay, notwithstanding being illiterate. The Court found that that was true on the merits and sent the case back for a new hearing. The critical conceptual point and the reason those cases are right, and I think the government will concede this when they get up on reply, is that the predicate for removing someone is both you have to find that they are removable and you have to find that the CFI process was conducted legally and they were legally denied the forms of relief to which they were applying in the CFI process. You may not remove a person until the CFI process is concluded. The government, I think, has never disputed and will concede again that Mr. Thurossian could not be removed based just on the inadmissibility. Congress has set up a system where you are allowed to apply for asylum, withholding, and convention against torture relief, and I would note importantly that those latter two forms of relief are mandatory, not discretionary. What's unusual about this situation is that your client really doesn't want to be released, and the government makes this point over and over in its brief. The government could take him to the airport, give him a ticket, and say, you are released, and he could leave. That's not what he wants. And the fundamental point of habeas is to secure release from what's claimed to be unlawful executive custody. So what is your answer to that? Right. So our client does ultimately want release, but what he has asked for is a new hearing, which is consistent with the way immigration works in criminal cases and habeas, what this Court called conditional release, which is for the benefit of the government. He would be thrilled to just be outright released and have the order vacated. Then he would be in this country and he would apply for asylum permanently. He wants to be released in this country so that he can remain in this country. He doesn't simply want to be released. And therefore, it does seem like what he wants is review of his entitlement to remain in this country, not simply what habeas provides, which is release from custody. Absolutely, Your Honor. He wants review of the removal order, which entails custody. The custody will be illegal if the removal order is. But let me offer three points about this. The first is we think the government is raising an issue that's already ultimately been decided by this Court. Congress began regulating immigration in 1875. Soon thereafter, the government made the exact argument that they're making now. Well, this isn't really habeas. We're just restraining you from coming in the country or restraining you from leaving. And the Court specifically could not have been more specific in rejecting that argument. That's the Nishimura Iku case in 1892. It was the Chin Yau case a few years later, and even before Iku was Jung Ha Lung. For the next 60 years in the finality, reviewed those cases. And the other point I would make about that is if the government's right that habeas doesn't even apply to deportation, then even lawful permanent residents would not be entitled to habeas because the restraint point would be the same with respect to them. That's not what they're saying at all, though. They're making a very clear distinction between inadmissibility and deportation and relying on Landon v. Plasencia and many other cases. So I think that's an overstatement of their position. So you're absolutely right, Justice Kavanaugh, and I'm simply responding to their independent argument, what they called an independent argument in the opening brief, and trying to respond to Justice Alito's question that this isn't classic habeas. They do try and get out from under that by then going to a Meaningful Ties test and using Placentias. You're absolutely right. But with respect to Justice Alito's question, those cases specifically answer it. The exact same arguments were made. Iku could not have been more clear. We know that you're simply asking to remain in the country, and they said, that is nonetheless proper for habeas. But there's... Following up on Justice Alito's point and the government's reliance on it, Munaf does say that there they were not seeking simply release. They wanted humanitarian protection to get out of the country. Release was the last thing they wanted. And this case is arguably the same, since, again, the release could be provided under their normal practice to these individuals by taking them out of the country to another country. They don't want that to happen. They want to be released into the population. And Munaf made, I think, pretty clear that that type of humanitarian release was not the purpose of habeas. Your Honor, a few points on that. I think Munaf was different because they didn't want to be released where they were arrested, which was Iraq. They came to Iraq. They didn't want to be released there. What they wanted, I think, as the opinion makes clear, is affirmative help from the United States to fly them back to the United States. Our client simply wants release where he was arrested. Now, the government says, well, we can release him in Sri Lanka. But, of course, that would be denying him relief on the merits. That's exactly what he fears. And so I think what the government is sort of implying is, well, you can get out of this if you just simply give up. I mean, if that were true, contempt cases wouldn't fall under habeas. I think the analogy that they press depends upon the fact that it's conceded that the individual does not have a right to be in the United States. Right. And so no immigrant, and I want to be clear about this, has an absolute substantive right to be in the United States. And that's not what habeas does. The value of the suspension clause is the framework was not to create rights, but to ensure that the grave power of restraint is never used except in accordance with law. So if Congress were to limit, further limit statutory rights, maybe even take the momentous step of withdrawing from our refugee treaties, then they would be reducing the rights. But habeas would still lie to make sure that you are not restrained except in accordance with positive law. That's the value for the framers. So the government's discussion about he has no absolute right to be here is sort of beside the point for habeas. Habeas was not designed to create substantive rights. It was to ensure that the law was followed. And so I want to turn to what the government hopes. But on the question of history, you make a point, but on the question of precedent in Landon v. Plasencia, and I just want to get your reaction to this. You know what sentence it is. Justice O'Connor, writing for eight justices, says the court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application. So that's a statement of law for eight justices. Why is that statement wrong? Or if it's not wrong, why doesn't it control here? Well, I think what the court was saying there, as we understand it, was specific to due process. The entire case was about due process. There was no question of judicial review or habeas. And I think what the court was doing was distinguishing between different people at a court who had procedural due process rights. That was the context of the sentence. The context, the sentence says no constitutional rights. Right. But I think it would be a lot in a case that didn't involve judicial review to take one sentence and say we're wiping away all the finality error cases, we're not discussing them. The difference between due process and habeas is stark. As Justice Sotomayor pointed out, the suspension clause predated due process. Due process and habeas have never been hinged in this Court's cases. So you take Mazzei and Knopf which established no procedural due process for people at the courts. They expressly held that they didn't have procedural due process, but then they went on in habeas to review the statutory and regulatory claims. They had very few statutory and regulatory claims on the merits, but the courts still reviewed them to make sure that the positive law was being followed. But wasn't it true in the finality error cases that the individuals once it was determined that they had not been properly detained, they did have a right to be in the United States because in that era, for most of that era, much of that era, there were not very many restrictions on immigration to the United States. And that's the difference between that case and this case. Well, I don't think so, Your Honor. I think for two reasons. One is the inadmissibility relief point, as I said before, there were finality error cases. That's the Accardi case, suspension of deportation, even though they were concededly removal. That's Todd v. Waldman, even though the refugees were illiterate and therefore inadmissible. They were excused from that. But the other point is that the court throughout the finality error always reviewed whether they fell within the statute or not. That's the Gigio case, EQ. All of those finality error cases were looking at whether they fell within the statute. There were restrictions. I mean, obviously, there weren't as many as now, but there absolutely were restrictions. And all the cases we cite on pages 13 through 15 of our brief are all cases where the court is looking at did they fall within the statute or the regulations. In any of those cases, did the court say anything more than when relief was granted was the relief anything other than you are released? Absolutely. And so the relief Other than Accardian, the other case you cited, which are perhaps in a category of their own. But for most of those finality error cases, wasn't the relief just you are released? No, Your Honor. Those cases established the principle in immigration that the government would get the benefit of a new hearing. That they didn't simply have to release the person and let them go. That there would be a new hearing where there was a legal defect that the government could potentially fix. So that's in addition to the case of Habeas, we would be able to apply in a full hearing for asylum or withholding and if we won he would be allowed to remain in the country. The reason we're not asking for full release is not because it's for our benefit. It's for the government's benefit. What this court said is the court doesn't have to permit full release. It can give the government another chance. The government can  that. They can    of Habeas Corpus and the government can do that. The government cannot take Habeas Corpus and the government can do that. The government  take Habeas Corpus and the government can do that. The government cannot take Habeas Corpus and the government can do that. Can the government take       do that. No one can take Habeas Corpus and the government can do that. So      Habeas Corpus and the government can do that. And the government has to take Habeas Corpus and the government can do that. And the    Habeas Corpus   government can do that. And the government has to take Habeas Corpus and the government can do that. And the the government   Habeas Corpus and the government can do that. And the the government has to take Habeas Corpus and the government can do that. Good. Thank you. The court's routinely reviewed mixed questions. That's the Roald case where the court said look you have to be meaningfully associated with the Communist Party and then went on to look extensively at the facts. What did he do with the Communist Bookstore? What was the purpose? Those are the cases on page 50 of our brief, mixed questions. But, the more fundamental point I want to make is we are okay if the court wants to reserve whether all  reasonable or if the application of law to fact is reviewable. Our point here is that there has to be review at least for gross misapplications of the statute because at that point where no one reasonably could conclude that on these historical facts you didn't meet the statutory standard, at that point what you're seeing is really a misunderstanding of the legal standard. What are the concrete issues that could be raised on habeas in this case? So, Your Honor, our two principal claims are statutory and regulatory. Let me deal with the statutory claim. What we are saying is on these historical facts, no asylum officer could reasonably have concluded that he did not meet the low significant possibility standard, the very low standard, which is a significant possibility of ultimately satisfying the legal   the reason why we're seeing a legal error is because the asylum officer by statute is required to look at the reports on country conditions. Every report, as the asylum experts point out, there is an exact description of how people are persecuted in Sri Lanka. Men arrive in a white van, they abduct the person, they blindfold the person, they beat and torture him. The asylum officer in our case accepted every one of those historical facts, but yet still said he didn't even meet the low significant possibility standard. That's impossible. So if this Court were to send it back and say at least where there's a legal error, which means the misapplication was so egregious that there was nothing in the administrative record. Now, maybe your client didn't understand what was going on, but all he said was that people drove up and they beat me. And that's it. And the officer said, are you a member of a political party? And he said, no. So that you're saying that on those facts, knowing nothing more than the fact that he was beaten up in Sri Lanka and he's a Tamil, that that's enough to provide, that that provides a sufficient basis for asylum? So two things, Justice Alito. One is that of course the merits are not up here. And if we lose, we lose. But I do want to point out that there were far more facts that showed he precisely fit the pattern. And I would also say, just to put a pin in it, that the amicus brief show by people from Sri Lanka or other countries would not either have the exact pattern. That's why we think we could prevail. But ultimately this Court just needs to decide is there habeas review and at least for legal errors where the application was so egregious that there had to be a misunderstanding of the sentence. I want to point out that there was not review of historical facts and we are not pressing that nor the exercise of discretion. We believe mixed questions, legal claims and constitutional claims. But again, even if this Court wants to narrow it to only egregious application. Because I'm still using the word egregious. That almost seems like whole cloth. It's either mixed or not. Well, Your Honor, I think if you wanted to say for this purpose of this case only legal claims and reserve whether mixed questions, I'm simply saying that when it becomes so agreed that no adjudicator could reasonably have concluded on the facts that it met the standard, I think at that point it would be a                          reasonable case. Thank you. Thank you, counsel.